UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

---------------------------------------------------------x

In re                                   :       Chapter 11 Case No.
                                        :       06-10179 (B)
OCA, INC., *et al.*,                    :
                                        :       Jointly Administered
                   Debtors.             :
---------------------------------------------------------x

**FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING
THE CONFIRMATION OF THE JOINT PLAN OF
REORGANIZATION OF OCA, INC. AND ITS
<u>FILED SUBSIDIARIES AS OF JANUARY 3, 2007</u>**[1]

This matter comes before the Court[2] on the confirmation of the amended Joint Chapter 11 Plan of Reorganization for OCA, Inc. ("<u>OCA</u>") and certain of its subsidiaries[3] as of January 3,

---

[1] All findings of fact are construed as conclusions of law and all conclusions of law construed as findings of fact to the extent applicable

[2] All capitalized terms not defined herein shall have the meanings ascribed to them in the Plan.

[3] Orthodontic Centers of Alabama, Inc. (06-10180); Orthodontic Centers of Arizona, Inc. (06-10181); Orthodontic Centers of Arkansas, Inc. (06-10182); Orthodontic Centers of California, Inc. (06-10183); Orthodontic Centers of Colorado, Inc. (06-10184); Orthodontic Centers of Connecticut, Inc. (06-10185); Orthodontic Centers of Florida, Inc. (06-10186); Orthodontic Centers of Georgia, Inc. (06-10187); Orthodontic Centers of Illinois, Inc. (06-10188); Orthodontic Centers of Indiana, Inc. (06-10189); Orthodontic Centers of Kansas, Inc. (06-10190); Orthodontic Centers of Kentucky, Inc. (06-10191); Orthodontic Centers of Louisiana, LLC (06-10192); Orthodontic Centers of Maine, Inc. (06-10193); Orthodontic Centers of Maryland, Inc. (06-10194); Orthodontic Centers of Massachusetts, Inc. (06-10195); Orthodontic Centers of Michigan, Inc. (06-10196); Orthodontic Centers of Minnesota, Inc. (06-10197);Orthodontic Centers of Mississippi, Inc. (06-10198); Orthodontic Centers of Missouri, Inc. (06-10199); Orthodontic Centers of Nebraska, Inc. (06-10200);Orthodontic Centers of Nevada, Inc. (06-10201); Orthodontic Centers of New Hampshire, Inc. (06-10202); Orthodontic Centers of New Jersey, Inc. (06-10203); Orthodontic Centers of New Mexico, Inc. (06-10204); Orthodontic Centers of New York (06-10205); Orthodontic Centers of North Carolina, Inc. (06-10206); Orthodontic Centers of North Dakota, Inc. (06-10207); Orthodontic Centers of Ohio, Inc. (06-10208); Orthodontic Centers of Oklahoma, Inc. (06-10209); Orthodontic Centers of Oregon, Inc. (06-10210); Orthodontic Centers of Pennsylvania, Inc. (06-10211); Orthodontic Centers of Puerto Rico, Inc. (06-10212); Orthodontic Centers of Rhode Island, Inc. (06-10213); Orthodontic Centers of South Carolina, Inc. (06-10214); Orthodontic Centers of Tennessee, Inc. (06-10215); Orthodontic Centers of Texas, Inc. (06-10216); Orthodontic Centers of Utah, Inc. (06-10217); Orthodontic Centers of Virginia, Inc. (06-10218); Orthodontic Centers of Washington, Inc. (06-10219); Orthodontic Centers of Washington, D.C., Inc. (06-10220); Orthodontic of West Virginia, Inc. (06-10221); Orthodontic Centers of Wisconsin, Inc. (06-10222); Orthodontic Centers of Wyoming, Inc. (06-10223); OrthAlliance, Inc. (06-10229); OrthAlliance New Image, Inc. (06-10230); OCA Outsource, Inc. (06-10231); PedoAlliance, Inc. (06-10232); Orthodontics Centers of Hawaii, Inc. (06-10503); Orthodontics Centers of Iowa, Inc. (06-10504); and Orthodontics Centers of Idaho, Inc. (06-10505).

2007. The Court has considered the argument and/or evidence presented at the confirmation hearing held on September 5, 6, 11, 14 and 15, 2006 and at the January 24, 2007 hearing on the January 3 Motion (as that term is defined below). The Court has taken judicial notice of the docket of the Debtors' Chapter 11 cases, all pleadings and other documents filed, all orders entered, and evidence and arguments presented at hearings during the pendency of these cases, including adversary proceedings in this Court; and also takes judicial notice of the docket.

After due deliberation, the Court hereby makes the following Findings of Fact and draws the following Conclusions of Law:

### GENERAL FINDINGS OF FACT AND CONCLUSIONS OF LAW

1. The United States Bankruptcy Court for the Eastern District of Louisiana has jurisdiction to conduct the confirmation hearing and the hearing on the January 3 Motion and to confirm the Plan (as that term is defined below) pursuant to 28 U.S.C. §§ 1334(a), and to enter these Findings of Fact pursuant to 28 U.S.C. § 157(b).

2. This contested matter is a core proceeding under 28 U.S.C. § 157(b)(2)(B) & (L).

3. OCA is a Delaware corporation whose principal place of business is in Metairie, Louisiana. OCA is the direct or indirect parent of each of the other Debtors. Each Debtor other than OCA is wholly-owned by OCA or another Debtor. Each of the Debtors maintains their corporate headquarters in Metairie, Louisiana. Accordingly, venue in this judicial district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The Debtors filed the Amended and Restated Joint Disclosure Statement for OCA, Inc. and the Filed Subsidiaries as of July 24, 2006 and the Amended and Supplemental Joint Chapter 11 Plan of Reorganization for OCA, Inc. and Filed Subsidiaries as of July 24,

2006 on July 24, 2006 (the "July 24 Plan of Reorganization") [P-1247]. The Debtors filed the Initial Modifications,[4] Notices of Intent,[5] and Motions to Reject[6] to amend and supplement the July 24 Plan of Reorganization. The July 24 Plan of Reorganization as amended and supplemented by the Initial Modifications, the Notices of Intent and the Motions to Reject along with any other modifications or amendments announced and approved during the Confirmation Hearing are collectively referred to herein, together with all related exhibits, attachments and notices thereto, as the "November Plan." On December 29, 2006 the Court denied confirmation of the November Plan for the reasons set forth in the Court's Memorandum Opinion [P-2141]. On January 3, 2007, the Debtors filed their Motion (1) For Entry Of Order Approving January 3,

---

[4] The Debtors filed immaterial modifications on August 18, 2006 [P-1535] (the "August 18 Modifications"), August 29, 2006 [P-1684] (the "August 29 Modifications"), September 1, 2006 [P-1766] (the "September 1 Modifications"), September 14, 2006 [P-1844] (the "September 14 Modifications"), November 22 (the "November 22 Modifications" and together with the August 18 Modifications, the August 29 Modifications, the September 1 Modifications, and the September 14 Modifications, collectively referred to as the "Initial Modifications").

[5] The Debtors supplemented the July 24 Plan of Reorganization by filing the Notice of Intent to Reject Business Service Agreements Pursuant to Plan of Reorganization and Bankruptcy Code (the "August 18 BSA Notice") [P 1539], the Supplemental Notice of Intent to Reject Business Service Agreements Pursuant to Plan of Reorganization and Bankruptcy Code (the "August 28 BSA Notice") [P 1649], Supplemental and Amended Notice of Intent to Reject Business Service Agreement(s) Pursuant to Plan of Reorganization and Bankruptcy Code (the "September 4 BSA Notice") [P 1795], the Notice of Intent to Reject Real Estate Leases Pursuant to Plan of Reorganization and Bankruptcy Code (the "August 28 Lease Notice") [P 1656], the Notice of Intent to Assume Real Estate Leases Pursuant to Plan of Reorganization and Bankruptcy Code (the "August 29 Lease Notice") [P 1683], the Amended and Restated Notice of Intent to Reject Real Estate Leases Pursuant to Plan of Reorganization and Bankruptcy Code (the "September 4 Lease Rejection Notice") [P 1792], the Amended & Restated Notice of Intent to Assume Real Estate Leases Pursuant to Plan of Reorganization and Bankruptcy Code (the "September 4 Lease Assumption Notice") [P 1793], Corrected Amended & Restated Notice of Intent to Assume Real Estate Leases Pursuant to Plan of Reorganization and Bankruptcy Code (the "September 5 Lease Assumption Notice") [P 1797], the Corrected Amended and Restated Notice of Intent to Reject Real Estate Leases Pursuant to Plan of Reorganization and Bankruptcy Code (the "September 5 Lease Rejection Notice") [P 1798], the Supplemental and Restated Notice of Intent to Reject Real Estate Leases Pursuant to Plan of Reorganization and Bankruptcy Code as of September 13, 2006 (the "September 13 Lease Rejection Notice") [P-1840], Supplemental and Restated Notice of Intent to Assume Business Service Agreement(s) Pursuant to Plan of Reorganization and Bankruptcy Code as of September 13, 2006 (the "September 13 BSA Assumption Notice") [P-1838], Supplemental and Restated Notice of Intent to Reject Business Service Agreement(s) Pursuant to Plan of Reorganization and Bankruptcy Code as of September 13, 2006 (the "September 13 BSA Rejection Notice") [P-1837], and Supplemental and Restated Notice of Intent to Assume Real Estate Leases Pursuant to Plan of Reorganization and Bankruptcy Code as of September 13, 2006 (the "September 13 Lease Assumption Notice") [P-1839], collectively referred to as the Notices of Intent.

[6] Motions for Authority for Order Pursuant to Section 365(a) of the Bankruptcy Code Authorizing Debtors to Reject Certain Agreements [P 1768 and 1771] (as amended, the "September 1 Motions"), Motion for Order Pursuant to Section 365(a) of the Bankruptcy Code Authorizing Rejection of Bylaws, Certificates of Incorporation, Articles of Incorporation or Similar Documents [P-1841] (the "September 13 Motion") and Motion to Reject Real Estate Lease With Highwood Properties, L.L.C. [P-1847] (the "September 14 Motion") collectively referred to as the Motions to Reject.

12

2007 Immaterial Modifications (the "January 3 Modifications") To The Amended And Supplemental Joint Chapter 11 Plan Of Reorganization For OCA, Inc. And Filed Subsidiaries, As Of November 22, 2006, (2) For Alteration, Amendment Or Reconsideration Of The Order Denying Confirmation Of The Plan And (3) For Entry Of Order Confirming Amended Plan, As Modified (the "January 3 Motion;" the November 22 Plan, as modified by the January 3 Modifications, the "Plan").  For the reasons set forth on the record at the hearing, the January 3 Motion is approved in its entirety and the Plan is confirmed and approved in its entirety by this Court.

5. The solicitation of votes was made in good faith and in compliance with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, the Voting Procedures Order and all other rules, law and regulations.

6. The Debtors caused Kurtzman Carson Consultants LLC to serve (1) the Notice of Confirmation Hearing and (2) Publication of Notice in accordance with the Voting Procedures Order.  (See 9/14 Hearing Transcript; P-1750).  Further, the record of these proceedings reflect that the Debtors provided notice of their intention to assume or reject executory contracts and leases, including BSA's, in accordance with the Orders of this Court and the Bankruptcy Rules.  This Court finds that notice is sufficient and meets the Requirements of the Bankruptcy Code, the Bankruptcy Rules and due process.

7. The terms and conditions of the Final DIP Financing Order and the Plan are incorporated herein by reference and all provisions thereof are in full force and effect.

8. [Reserved]

9. Based on the record of the Debtors' chapter 11 cases, and the evidence adduced at the Confirmation Hearing and argument before the Court, the Court finds that the

Lenders, the DIP Financing Agent and the Senior Agent (and each of their respective former, current or future officers, employees, directors, agents, representatives, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates and predecessors in interest) have never been insiders or persons in control of the Debtors (in each case within meaning of the Bankruptcy Code) for at least the following reasons: (1) none of them have, in any manner, exercised control or dominion over or with respect to the Debtors; (2) none of them have taken any action or have engaged in any conduct that would have precluded the Debtors from soliciting or entering into alternative restructuring or reorganization transactions or soliciting and seeking financing from parties other than the Lenders; and (3) all transactions (including, without limitation, the preparation and negotiation of all credit facilities and all related documents, amendments, consents and waivers, and all documents related to the Plan and the Plan Supplements, <u>but excluding</u> the (A) preparation, negotiation, entering into and execution of that certain subordination agreement entered into by Palmisano, OCA and the Senior Agent on August 18, 2005 (the "<u>Subordination Agreement</u>") and (B) all loans made by Palmisano to the Debtors pursuant to those certain promissory notes dated June 10, 2005 and August 18, 2005, respectively, that were subordinated in accordance with the Subordination Agreement) entered into by the Lenders, the DIP Financing Agent and/or the Senior Agent and the Debtors were the product of arm's length negotiations and entered into in good faith.

10. The total reorganization value of the Debtors is $96,000,000. (See 12/29 Memorandum Opinion at p. 19). Since the reorganization value of the Debtors does not exceed the aggregate amount of the Lenders' Claims, the holders of all other Claims and Equity Interests in the Debtors are not legally entitled to any recovery on the basis of the absolute priority rule.

11. The Plan complies with section 1129(a)(7) of the Bankruptcy Code. Section 1129(a)(7) requires that, with respect to each impaired class of Claims or Equity Interests, each holder of such Claims or Equity Interests (a) has accepted the plan or (b) will receive or retain property of a value, as of the effective date of the plan, that is not less than the amount such holder would receive if the debtor were liquidated on such date. Classes 3, 4, 5 and 6 are impaired under the Plan. Class 3 has accepted the Plan. General Unsecured Creditors (Class 4), holders of Subordinated Claims (Class 5) and holders of Equity Interests in OCA (Class 6) will receive at least as much under the Plan as they would in a chapter 7 liquidation.

**THE PLAN OF REORGANIZATION IS CONFIRMABLE UNDER 11 USC §1129**

1. In compliance with Section 1123(a)(1) of the Bankruptcy Code, the Plan designates classes of claims and interests (other than claims of a kind specified in Bankruptcy Code Sections 507(a)(1), 507(a)(2) or 507(a)(7)). Further, the Plan provides the same treatment for each claim and interest in every class. (Plan article 3).

2. The Plan further complies with the requirement of Section 1123(a)(2) of the Bankruptcy Code that a plan "specify any class of claims or interests that is not impaired under the Plan" by specifying that Classes 1, 2 and 7 are unimpaired under the Plan and are conclusively presumed to accept the Plan. Similarly, the Plan complies with Section 1123(a)(3) of the Bankruptcy Code, which requires that a plan "specify the treatment of any class of claims or interests that is impaired under the plan," by specifying the treatment of Claims and Equity Interests in Classes 3, 4, 5 and 6 which Classes are found to be impaired for purposes of the Bankruptcy Code. (Plan article 3).

3. The Debtors have identified the officers and directors to serve post confirmation and their compensation. (See Gries Test. 9/6; P-1788). The appointment of these officers and directors is consistent with the interest of creditors and interest holders.

4. The Plan provides for the inclusion in the Debtors' charter provisions prohibiting the issuance of non voting equity securities. (Plan section 8.16).

5. The Allowed Administrative Claims and all Priority Allowed Claims are to be paid in full and in accordance with 1129(a) pursuant to the terms of the Plan. (Plan section 2.1, 2.2).

6. All provisions in the Plan are consistent with the Bankruptcy Code and applicable non-bankruptcy law.

7. The testimony indicates that, consistent with the requirements of 1129(a)(2) and 1129(a)(3), the Debtors have complied with all provisions of the Bankruptcy Code and applicable non-bankruptcy law and that the Debtors proposed the Plan in good faith and not by any means forbidden by law. Each of the Plan Supplements, the Plan and all related documents and transactions were negotiated in good faith and at arms' length by the Debtors, the UCC, and the Lenders. (See Gries Test. 9/5; Palmisano Test. 9/11). The terms of each of the term sheets and documents that constitute the Plan Supplements or are contemplated by the Plan Supplements are hereby approved in all respects as fair and reasonable, reflecting the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

8. All payments under the Plan which are required to be approved by the Court under 1129 (a)(4) have been either approved by the court or are subject to approval of the Court.

9. No regulatory agency must approve rates charged by the Debtors. (See Gries Test. 9/5)

10. Classes 1, 2 and 7 were unimpaired, did not vote and are deemed to have conclusively accepted the Plan.

11. This Court finds that Class 3, an impaired class, voted in favor of the Plan. (See P-1850). Based on the evidence adduced at the hearing and the arguments heard by the Court, Class 3 is an accepting impaired class for purposes of section 1129(a)(10) of the Bankruptcy Code. No entity that has voted Class 3 Claims was, at any time, an insider (as that term is defined in the Bankruptcy Code).

12. Class 4, an impaired class, rejected the Plan. (See P-1850).

13. The holders of Class 5 Claims are deemed to reject. (See Gries Test. 9/6).

14. Class 6 consists of equity interests in OCA, Inc. and this Class rejected the Plan. (See P-1850).

15. Classes 4, 5 and 6 are the only dissenting Classes. (See P-1850).

16. As the Plan provides that the Debtors are consolidated for purposes of distribution, the Court finds that any value attributable to the Class 7 Equity Interests has been effectively made available to Holders of Claims. (Plan section 6.17).

17. The Plan provides for the disposition of all Claims against the Estates, while providing a mechanism for the Debtors to resolve its pending disputes with Affiliated Practices. Thus, the Debtors will emerge from this chapter proceeding with a restructured debt and a business model which puts it on the path to a successful reorganization. (See Gries Test. 9/6). There will be no need for further reorganization or liquidation and, thus, the Plan is feasible as required by 1129(a)(11).

18. Section 1129(a)(13) governing retiree benefits is not applicable as there are no retiree benefits the Debtors are obligated to pay.  (See Gries Test. 9/6).

19. No governmental agency has requested denial of confirmation under 1129(d). (See Gries Test. 9/5).

20. The deemed substantive consolidation of the Debtors' chapter 11 cases for the purposes and the extent set forth in the Plan is in the best interests of the Debtors, their estates, creditors and holders of the Debtors' Equity Interests.  The Disclosure Statement, the pleadings filed in the Debtors' chapter 11 cases and the evidence adduced at the hearing confirming the Debtors' Plan demonstrates that the Debtors have set forth sufficient factual bases for the substantive consolidation contemplated by the Plan.  (See Gries Test. 9/6, p. 130-136). Moreover, substantive consolidation of the Debtors for the purposes and to the extent set forth in the Plan will not prejudice the rights of any of the Holders of Claims or Equity Interests.

21. Section 1145 of the Bankruptcy Code applies with respect to the offering, issuance and transfer of the New Common Stock under the Plan to holders of Senior Lender Claims and, therefore, the New Common Stock issued pursuant to the Plan to such holders and its subsequent transfer will be exempt from registration under the Securities Act of 1933, as amended, and all rules and regulations promulgated thereunder, as well as any and all applicable state and local laws, rules, and regulations.

22. The Plan of Reorganization provides for the assumption of certain executory contracts or unexpired leases, other than BSA's or SSA's, which have not been previously rejected and shall be assumed and/or assigned in accordance with the terms specified therein. The evidence establishes that the assumption of these contracts is in the best interest of the Debtors, the Estates and all parties in interest to these chapter 11 cases.  (See Gries Test. 9/5).

12

The Debtors have identified the Real Estate Leases which they intend to assume as set forth above. (See id.) Specifically, this Court finds that each such executory contract or unexpired lease is an executory contract which may be assumed by the Debtors, there are no defaults of the Debtors, no cure payments owing, no compensation due for an actual pecuniary loss and the Debtors have demonstrated adequate assurance of future performance with respect to each of these contracts by assuming such contracts, and the assumption of these contracts is in the best interest of the Debtors and their estates. Specifically, those leases included in the August 28 Lease Notice, August 29 Lease Notice, and the September 5 Lease Assumption Notice and September 13 Lease Assumption Notice may be assumed with a cure amount as provided in the Plan.

23. Upon the Effective Date, the assumed executory contracts and unexpired leases, other than BSA's and SSA's, shall constitute legal, valid, binding and enforceable contracts in accordance with the terms thereof and do not violate any applicable law or regulation and the counterparties to each such contract are required to perform under and honor the terms of the assumed executory contracts or unexpired leases.

24. The Debtors have identified the Current BSA's which they intend to assume as set forth above. (See Gries Test. 9/5). The evidence establishes that the assumption of the Current BSA's is in the best interest of the Debtors, the Estates, and all parties in interest of these chapter 11 cases. This Court finds that each assumed Current BSA (including, without limitation any assumed Current BSA's including any Support Service Agreements amended in accordance with §5.1.2.1(a)) is an executory contract which may be assumed by the Debtors. The Court further finds that there are no defaults of the Debtors, no cure payments owing, no compensation due for any actual pecuniary loss and the Debtors have demonstrated adequate

12

assurance of future performance with respect to each of the Current BSA's including any SSA's by assuming such BSA's or SSA's.  The Court further finds that such assumption is in the best interest of the Debtors and the Estates and that upon the Effective Date, the assumed Current BSA's (including, without limitation, any assumed Current BSA's amended in accordance with Section 5.1.2.1(a), including SSA's), shall constitute legal, valid, binding and enforceable contracts in accordance with the terms thereof and do not violate any applicable law or regulation, and the Affiliated Practices are required to and are ordered to perform under and honor the terms under the assumed current BSA's (including, without limitation, any assumed Current BSA's amended in accordance with Section 5.1.2.1(a), including SSA's).  The Court finds that the Plan is an "acceptable plan" as that term is used in the SSA's executed by the Debtors.

    25. The Court also finds that the Debtors have specifically identified the Defaulted BSA's which it intends to assume as set forth above.  (<u>See</u> Gries Test. 9/5).  The evidence establishes that the assumption of these Defaulted BSA's is in the best interest of the Debtors, the Estates, and all parties in interest to these chapter 11 cases.  (<u>See</u> id.)  Each assumed Defaulted BSA (including, without limitation, any assumed Defaulted BSA's amended in accordance with Section 5.1.2.2(a), including SSA's), is an executory contract which may be assumed by the Debtor, (ii) there are no defaults of the Debtors, no cure payments owing, no compensation due for any actual pecuniary loss and the Debtors have demonstrated adequate assurance of future performance with respect to of each assumed Defaulted BSA by assuming such Defaulted BSA, (iii) such assumption is in the best interest of the Debtors and the Estates, (iv) upon the Effective Date, the assumed Defaulted BSA's (including, without limitation, any assumed Defaulted BSA's amended in accordance with Section 5.1.2.2(a), including SSA's),

constitute legal, valid and binding contracts in accordance with the terms thereof and do not violate any applicable law or regulation, and (v) the Affiliated Practice is required to and ordered to perform under and honor the terms of the assumed Defaulted BSA's (including, without limitation, any assumed Defaulted BSA's amended in accordance with Section 5.1.2.2(a), including SSA's), provided that the findings in sub-paragraphs (iv) and (v) of this Paragraph 36 shall not apply to Robert Thacker.

26. The BSA's rejected under the Plan identified as set forth above are burdensome to the Debtors and their estates, and the rejection thereof is a proper and appropriate exercise of the Debtors' business judgment and rejection is in the best interest of the Debtors and their Estates. (See Gries Test. 9/5). The leases rejected under the Plan identified as set forth above are burdensome to the Debtors and their Estates, and the rejection thereof is a proper and appropriate exercise of the Debtors' business judgment and rejection thereof is in the best interest of the Debtors and their Estates.

27. The Debtors have met their burden of proving, by a preponderance of the evidence, that the Plan satisfies the elements of section 1129 of the Bankruptcy Code and complies with the other provisions of the Bankruptcy Code and any applicable non-bankruptcy law. The Court also finds that the Debtors have satisfied the elements of section 1129 of the Bankruptcy Code and of every other applicable provision of the Bankruptcy Code and any applicable non-bankruptcy law under the clear and convincing standard of proof.

**Covered Officers and Directors**

28. The primary layer of directors and officers' insurance policies is in the amount of $10 million and issued by AIG. The excess layer issued by XL Specialty Insurance Company is in the amount of $10 million.

1. The Court also finds that although Palmisano and other directors and officers who are not entitled to the covenant not to execute set forth in section 6.2 of the Plan do not receive the same treatment under the Plan because they have not made the same contributions as the Covered Officers and Directors and because the Debtors are likely to possess significant Causes of Actions against each of them. (See Gries Test. 9/6).

2. The terms of this Plan and the covenant not to execute set forth above do not violate any obligation of the Debtors or any Covered Director and Officer under any provision of any directors' and officers' insurance policy. (See Debtors' Ex. 53, 54).

3. The covenant not to execute set forth in section 6.2 of the Plan is essential to this Plan and the Debtors' reorganization efforts. (See Gries Test. 9/6).

4. The terms of the Plan do not effect any change to the coverages or policies of any directors' and officers' insurance and do not materially increase any insurer's risk of providing coverage for covered claims under the relevant insurance policies as compared to the risk that was otherwise being borne by the insurers prior to the Effective Date. (See Gries Test. 9/6).

5. The covenant not to execute does not constitute a settlement with the Covered Officers and Directors, a release of claims against the Covered Officers and Directors or a restriction on any party's right to commence or pursue litigation against the Covered Officers and Directors, except as expressly set forth in Section 6.2 of the Plan subject to Section 6.2.9 of the Plan.

6. The rights of any person or entity to collect proceeds from any directors and officers' insurance policy at any time purchased by or entered into by any of the Debtors

remains unchanged notwithstanding the Debtors' having filed for bankruptcy protection and the confirmation of the Plan.

      7.      All of the Debtors' insurers who are affording directors' and officers' insurance coverage that is the subject of the covenant not to execute have been given notice and an opportunity to be heard in connection with the Confirmation Hearing.

      8.      Upon the Effective Date of this Plan, the covenant not to execute set forth in section 6.2 of the Plan, subject to section 6.2.9 of the Plan, shall be in full force and effect.

      9.      The stipulation of August 3, 2006 entered into by and between the Debtors and various other parties (P- 1316) (the "Stipulations and Order") is incorporated herein and in the event of any conflict between terms of the Plan, these Findings Of Fact And Conclusions Of Law and the terms of the Stipulations and Order, the terms of the Stipulations and Order shall prevail only with respect to the Stipulating Parties.

    New Orleans, Louisiana, January 26, 2007.

                                                                   Jerry A. Brown
                                                                   U.S. Bankruptcy Judge