UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO. 06-10179 |
| OCA, INC. et al. | SECTION "B" |
| DEBTORS | CHAPTER 11<br>Jointly Administered |

**REASONS FOR ORDER**

This matter came before the court on March 15-19, 2007 on the debtor's motion to assume an executory contract, which was contained in the confirmed plan of reorganization (P-2213), and the objection to assumption (P-1086) filed by Dr. Grace Machi ("Machi"). For the reasons set forth below, the court grants the motion to assume.

**I.      Background Facts**

The debtor, OCA, Inc. ("OCA"), is a company that provides services to affiliated dental practices through separate subsidiaries that operate in each state where there is an affiliated practice. The basic business model of OCA and its subsidiaries is that they enter into business services agreements ("BSAs") with affiliated dental practices, primarily orthodontists. OCA provides the necessities for starting up and running a dental practice, i.e., office space, equipment, trained office staff, computer software for managing the practice. In exchange the affiliated practice pays a monthly service fee based on a percentage of the practice's profits. These BSAs are the primary operating asset of OCA and are the means through which it generates its revenue.

OCA and most of its subsidiaries filed Chapter 11 petitions under the Bankruptcy Code

on March 14, 2006.[1]  A small number of additional subsidiaries filed Chapter 11 petitions on March 17, 2006 and June 2, 2006.  All of the 51 subsidiary debtors' cases have been consolidated and are being jointly administered with the main case.[2]

OCA and Machi entered into a BSA in June 1998 and Machi began operating dental offices in Wisconsin.  An amendment to the BSA was executed on May 23, 2000 to include the addition of two more offices in Wisconsin.  After OCA filed its Chapter 11 petition, it reached an agreement with Machi, as well as several other affiliated practices, that both parties would continue to perform under the BSA until the court could make a determination as to whether the BSA could be assumed by the debtor.[3]  OCA's plan of reorganization was confirmed by the court on January 26, 2007, and Article 5 of the plan constituted a motion to assume the BSAs as of the effective date of the plan.[4]  Article 5 also provides that the court hear the motions to assume and determine certain issues including: 1) the nature, extent and amount of any default by the debtor; 2) the method of cure; 3) the method of providing adequate assurance of future performance and compensation for any default; and 4) all other matters pertaining to assumption.

Machi timely filed an objection to assumption alleging that the BSA could not be assumed because under state law it was terminated pre-petition, and because the BSA is illegal under Wisconsin law.  Machi further asserts that the BSA is in the nature of a personal services contract and cannot be enforced by the debtor or that the BSA is a "performance contract" that

---

[1] See title 11 of the United States Code, 11 U.S.C. § 101 *et seq.*

[2] For simplicity, when the court refers to OCA or the debtor, the court means all of the 52 debtor companies collectively unless it specifically enumerates an individual company.

[3] (P-1295).

[4] (P-2213).

cannot be enforced through specific performance. Finally, Machi contends that in the event the contract was not terminated pre-petition, the debtor is in default and owes a cure amount pursuant to 11 U.S.C. § 365(b)(1).

## II.     Legal Analysis

Section 1123(b)(2) of the Bankruptcy Code states that a plan of reorganization may provide for the assumption of executory contracts subject to the strictures of § 365. The parties appear to agree that the BSA is in fact an executory contract, or at least no argument was raised that it is not an executory contract. It certainly fits the classic definition of an executory contract as substantial performance is still due from both parties to the BSA.[5] Courts apply the "business judgment" rule when examining a debtor's decision to assume or reject a contract; i.e., the court should review the trustee's decision to assume or reject an executory contract by examining the "contract and the surrounding circumstances and apply its best 'business judgment' to determine if it would be beneficial or burdensome to the estate to assume it."[6]

First the court examines Machi's claim that the BSA terminated pre-petition. Only contracts in existence at the commencement of the case may be assumed under § 365.[7] At the hearing, no evidence was presented to support Machi's argument that the BSA termninated pre-petition. Machi admitted that she has received payments from OCA of $155,000 per year and

---

[5] As of the date of the filing of the Chapter 11 petition and even down to the date of trial, OCA was continuing to perform its obligations under the BSA. Machi is also continuing to perform her obligations under the BSA.

[6] *In re Orion Pictures Corp.,* 4 F.3d 1095, 1098 (2nd Cir. 1993). *See also N.L.R.B. v. Bildisco,* 465 U.S. 531, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984).

[7] *Moody v. Amoco Oil Co.,* 734 F.2d 1200, 1212 (7th Cir. 1984); 3 Collier on Bankruptcy ¶ 365.02[2] (15th ed.rev. 2005).

continued to receive those payments even after OCA filed its Chapter 11 petition.[8] The termination provisions of the Machi BSA require certain steps be taken for the contract to be terminated, and the court found no evidence that any of these steps were taken.[9] Thus, the court finds that the BSA was not terminated pre-petition.

The court next examines Machi's contention that the BSA is in the nature of a personal services contract and cannot be assumed for this reason. Although Machi does not cite the section of the Bankruptcy Code under which she brings this objection, the court assumes Machi refers to § 365(c)(1), which states:

> The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if-
> (1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and
> (B) such party does not consent to such assumption or assignment.

This provision, which is often referred to as prohibiting the assumption of personal service contracts, only applies, however, when the applicable law excuses the *non-debtor party* to the contract from accepting performance from a third party. Nothing in underlying law that Machi points to or that the court can locate would allow Machi to refuse to accept performance of the debtor's contractual duties from another party. Indeed, Machi does not contend that she is excused from accepting performance from an entity other than the debtor. Thus, the court rejects Machi's argument that this is a non-assumable personal services contract within the meaning of

---

[8] Trial Transcript of March 16, 2007 at p. 95.

[9] Exhibit 1, copy of the Machi BSA at section 4.

11 U.S.C. § 365(c)(1).

Machi refers to two cases from Ohio courts in her proposed findings of fact to support her argument that the BSA is a "performance contract" that cannot be enforced through specific performance.  The first, *Podlesnick v. Airborne Express, Inc.,* 627 F.Supp. 1113 (S.D.Ohio 1986) merely stands for the proposition that under Ohio law, specific performance is not available as a remedy to a former employee seeking reinstatement of his employment and is completely inapposite here in that this court is not faced with a former employee demanding reinstatement; additionally, that case was decided under Ohio law and not Wisconsin law.  The second case referred to by Machi, *Namay v. Orthodontic Centers of Ohio* in the Northern District of Ohio, was not even an opinion issued by that court but instead was an order granting in part and denying in part cross motions for summary judgment.  Additionally, the court's research has determined that the order, which was issued on March 16, 2005 was subsequently ordered stricken from the record by order dated April 4, 2005.  Thus the court gives no effect to the March 16, 2005 order not only because it does not address any issues of Wisconsin law, but it is no longer even a valid order of the Ohio district court.  Finally, the court notes that this is a motion to assume a contract.  The debtor has not requested specific performance here.  So the court need not address this issue.

Machi next claims that the BSA cannot be assumed because it is illegal under section 447 of the Wisconsin Statutes.  The court has examined §447 in its entirety and is unable to find any provision that prohibits any of the provisions in the BSA between Machi and the debtor.[10]  The

---

[10] Section 447 of the Wisconsin Statutes is quite lengthy, and the court will not reproduce it here.

court has ruled in some of the related adversary proceedings before it in this Chapter 11 that in certain states, statutory language regulating the practice of dentistry does prohibit similar agreements.[11] This does not mean, however, that every BSA the debtor has entered into is illegal on its face as Machi seems to suggest. The court rejects the assertion that the BSA cannot be assumed because it is illegal under Wisconsin law.

In short, Machi has made no persuasive argument why the debtor should not be allowed to assume this BSA. On its face it does not clearly appear to be a contract violative of Wisconsin law, and there certainly is a sufficient benefit to the debtor in electing to assume this contract. Keeping the BSAs alive over a period of years is not just beneficial to the debtor, it is the lifeblood of the debtor's business. Under the debtor's business model, it advances substantial sums of money at the beginning of the contractual relationship to make available to the young orthodontist opening an office or to an orthodontist seeking to add offices, the office space, expensive equipment, software systems, furniture, fixtures, business advice, and other amenities essential to start a first, second or additional offices. In this case Dr. Machi was furnished the wherewithal to operate at various times at least five different offices in Wisconsin. OCA planned to and its future success is dependant upon recouping these hundreds of thousands of dollars advanced in the first years of the arrangement over a long period of time by receiving a percentage of the practice's profits. Assumption of the BSA is not just beneficial, it is essential

---

[11] The court is certainly aware that it has already held that the BSAs utilized by OCA in Texas, Illinois, Washington and Colorado were illegal under the laws of those particular states. In those cases, there was, if not definitive authority, at least clear guidance by either a state court or a federal district court sitting in the state concerned, which this court felt compelled to follow. *See generally Penny v. Orthalliance, Inc.,* 255 F.Supp.2d 579 (N.D.Tex. 2003); *Orthodontic Centers of Illinois, Inc. v. Michaels*, 403 F.Supp.2d 690 (N.D.Ill. 2005); and this court's reasons for order in Adv.P.No. 06-1162 (P-32) and Adv.P.No. 06-1210 (P-33).

to successful consummation of the debtor's plan of reorganization. The court will not second guess the debtor's business judgment by denying the motion to assume. Further, the court finds that because the debtor has continued to perform the contract post-petition, it is not in default; thus, there is no cure amount. The motion to assume is granted.

New Orleans, Louisiana, August 24, 2007.

*Jerry A. Brown*
U.S. Bankruptcy Judge