UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:                                                  CASE NO. 06-10179

OCA INC., ET AL                                         SECTION "B"

DEBTORS                                                 CHAPTER 11
                                                        JOINTLY ADMINISTERED

## MEMORANDUM OPINION

This matter came before the court on March 10, 2008 on the motion by the debtor, OCA, Inc., to enforce the second order, the confirmation order and the stipulations, and for contempt against Dr. Darrin Cupo and his professional corporation (collectively "Dr. Cupo") (P-2467).  At the end of the hearing on the motion, the court held that Dr. Cupo had violated the court's order and was in contempt of court.  The court ordered that the parties file briefs on the question of sanctions for the violation of the order.  Having considered the briefs, the court finds that Dr. Cupo should be sanctioned for violating the court's order and fixes the monetary amount of the sanctions at $168,553.21 plus interest, attorneys' fees and costs.

## I.      Background Facts

This matter arises out of an order issued by the court on March 16, 2006, two days after OCA's Chapter 11 petition for relief under the U.S. Bankruptcy Code was filed.  It has been referred to throughout the case as The Second Order (P-46).  The Second Order was meant to preserve the status quo of the debtors' affairs by preventing doctors who had a contractual relationship with one of the debtor companies from attempting to terminate that contractual

1

relationship before the court had the opportunity to adjudicate the dispute.[1]

Dr. Cupo was party to a Business Services Agreement ("BSA") with the debtor at the time the debtor filed its petition for relief. Dr. Cupo was not among the doctors who had issued a written notice of termination or default prior to the filing date, March 14, 2006, thus, he was subject to the Second Order. Dr. Cupo, along with a number of other doctors, entered into a stipulation with the debtor that was approved by the court and entered into the record on August 3, 2006 (P-1316). In the stipulation Dr. Cupo agreed to continue to perform under the BSA consistent with the terms of the Second Order until a final order or final judicial determination on the merits of the BSA litigation was entered. Under the terms of the BSA between the debtor and Dr. Cupo, he was required to deposit the patient generated revenue from his office into an account (the "OCA account") over which the debtor had authority. The BSA required the debtor to use these funds to pay the expenses of Dr. Cupo's office, including a monthly service fee payable to the debtor.

Dr. Cupo complied with the Second Order and the stipulation until July 2007, when he stopped depositing the revenues from his practice into the OCA account. On June 25, 2007, Dr.

---

[1] The Second Order reads in part as follows:

Upon the above-captioned motion of the debtors and debtors-in-possession in the above-captioned chapter 11 cases seeking an order directing the Affiliated Practices to continue to operate under the Business Service Agreements, including without limitation, making timely deposits and payments to the Debtors pursuant to section 105(a) of the Bankruptcy Code, and after due deliberation and good cause appearing therefore, accordingly; IT IS ORDERED that any and all Affiliated Practices from whom the Debtors have not received written notice of termination or written notice of default prior to the filing by the Debtors of the Chapter 11 bankruptcy petitions for relief on March 14, 2006, shall continue to comply with the BSAs, including, but not limited to, making their deposits and paying the Service Fees to the Debtors; and IT IS FURTHER ORDERED that any Affiliated Practice objecting to the relief granted herein must file a written objection with the Court by March 31, 2006.

Cupo sent a Notice of Default to the debtor stating that he had learned of OCA's plans to open a

new office for another doctor in violation of the terms of the BSA, which prohibited OCA from

associating with any orthodontist who has offices within five miles of Dr. Cupo's office.[2]  The

letter stated that if OCA continued with its plans to open the new office, Dr. Cupo would stop

depositing and paying service fees to OCA on July 23, 2007.  The Notice of Default was followed

by a Notice of Termination dated July 23, 2007 in which Dr. Cupo notified OCA that because it

had proceeded with the plans to open the new office within a mile from his office, he considered

OCA to have repudiated the BSA.[3]  Dr. Cupo further stated that he was terminating their

agreement.  Upon transmitting the Notice of Termination, Dr. Cupo ceased depositing into the

OCA account, and filed a lawsuit in Florida federal district court on a breach of contract claim.[4]

The debtor then filed this motion for enforcement of the Second Order seeking relief in the form

of a declaration that the order had been violated, sanctions, and further seeking to compel Dr.

Cupo to resume depositing his patient revenues into the OCA account and comply with the BSA.

At the hearing on the motion, Dr. Cupo argued that he should not be found in violation of

the Second Order and the stipulation because the circumstances leading to the notice of default

were not merely a continuation of the breach of contract suit that Dr. Cupo had filed against OCA

---

[2]  Exhibit 5.

[3]  Exhibit 6.

[4]  Dr. Cupo filed a complaint in the U.S. District Court for the Southern District of
Florida.  OCA filed a motion in that case requesting a transfer of the case to the U.S. District
Court for the Eastern District of Louisiana where the initial suit by Dr. Cupo against OCA is
currently pending.  The Florida court granted that motion and transferred the case to the federal
court in Louisiana on April 17, 2008.  Thus, both cases are currently before the district court in
the Eastern District of Louisiana.  Case No. 07-5643 and Case No. 08-1711.

at the outset of the bankruptcy case, but a new distinct breach of the BSA that gave Dr. Cupo new grounds for termination of the contractual relationship.  The court rejected that argument, finding that Dr. Cupo should have first come to the court to request that the court lift the order requiring Dr. Cupo to continue making payments under the BSA before he unilaterally took action and ceased depositing the revenues from his practice into the OCA account.  At the hearing Dr. Cupo also stated for the record that he wished to renew his previously denied motion to dismiss for lack of subject matter jurisdiction (P-2594) and his previously denied motion to stay the hearing on the debtor's motion (P-2807).

## II.    Legal Analysis

Because the court found that Dr. Cupo did violate the Second Order and the stipulation, the only question now before the court is the nature and amount of any sanctions that should be imposed for Dr. Cupo's violation of the court's orders.  OCA argues that it should be placed in the position it would have been had Dr. Cupo not violated the Second Order and stipulation and argues that the sanctions should include 1) all outstanding service fees owed to OCA from the date Dr. Cupo stopped depositing to present; 2) an order that Dr. Cupo resume performance under the contract, including making all future deposits and paying all future service fees; and 3) that Dr. Cupo be taxed with the costs and attorneys' fees, including expert fees that OCA incurred in bringing its motion.  Dr. Cupo's position is that the court does not have jurisdiction over this dispute because it is a post-confirmation state law claim and that to grant OCA the sanctions it requests is tantamount to deciding the breach of contract cases, which are currently pending before the federal district court.[5]  Dr. Cupo further argues that his actions were not willful in that

---

[5]  See footnote 4 *supra.*

4

he was following the advice of his counsel when he stopped depositing, and therefore, any

sanction should be minimal, and should take the form of a simple fine payable to the Clerk of

Court.

The court will first address Dr. Cupo's jurisdiction argument.  As stated by the court in its

ruling on Dr. Cupo's motions to dismiss and to stay this action, which were heard on March 5,

2008, the issue before the court is not whether OCA or Dr. Cupo breached the BSA post-

confirmation.  That is indeed a matter for the district court to decide and is properly before that

court as noted above.  The issue before this court on the debtor's motion is whether Dr. Cupo

violated the Second Order and the stipulation, both of which were entered as orders of this court

during the bankruptcy case.  The power to enforce its own orders is certainly within the

jurisdiction of this court.[6]  The court determined at the March 10, 2008 hearing that Dr. Cupo had

violated the Second Order and the stipulation because he stopped depositing into the OCA

account and did so without first seeking permission to do so from this court.  Thus, the court

emphasizes its prior ruling that it did have jurisdiction to enforce the Second Order and

stipulation and holds that it continues to have jurisdiction to determine the sanctions to follow

from that violation.

The court next addresses the amount and type of sanctions that should be entered against

Dr. Cupo for his violation.  The purpose of a civil contempt order is to coerce compliance with a

---

[6]  *In re Gandy,* 299 F.3d 489 (5th Cir. 2002) (bankruptcy court has undisputed power to
enforce its own orders); *Henderson v. Office of Thrift Supervision,* 135 F.3d 356 (5th Cir. 1998)
(well settled that courts of the United States have the inherent power and authority to enforce and
effectuate their lawful orders and judgments); *In the Matter of Terrebone Fuel & Lube, Inc.,* 108
F.3d 609 (5th Cir. 1997) (bankruptcy courts have the power to hold civil contempt proceedings).

court order or to compensate another party for the contemnor's violation.[7]  Thus,

> Fines in civil contempt proceedings may be levied for either of two purposes: 1) to compensate the complainant, in which case the amount must be limited to actual damages shown, or 2) to compel the contemnor to comply with the court's order, in which case the amount must be reasonably designed to force compliance, without being punitive.[8]

The Fifth Circuit has held that, "such sanctions should be adapted to the particular circumstances of each case, and that the only limitation upon the sanctions imposed is that they be remedial or coercive but not penal."[9]  Additionally, "the [trial] court has broad discretion in the assessment of damages in a civil contempt proceeding."[10]

With this in mind, the court reviews the sanctions requested by OCA.  OCA first asks for all outstanding service fees owed to OCA from the date Dr. Cupo stopped depositing to present. Dr. Cupo argues that to award these amounts would be tantamount to deciding the breach of contract case.  The court disagrees.  "There is a difference between a damage action. . . and a compensatory sanction issued by a court for disobedience of its mandates.  With the compensatory sanction, the end result is largely the same as an action for damages - the [movant] is compensated.  However, the justification for the sanction is different than that for the damage action."[11]  Here, the sanctions are for violating the court's orders, which is the only matter before

---

[7]  *In the Matter of Terrebone Fuel & Lube, Inc.,* 108 F.3d 609, 611 (5th Cir. 1997).

[8]  *In re Dinnan,* 625 F.2d 1146, 1149 (5th Cir. 1980) *citing U.S. v. United Mine Workers,* 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed 884 (1947).

[9]  *Florida Steel Corp. v. NLRB,* 648 F.2d 233, 239 (5th Cir. Unit B. 1981).

[10]  *American Airlines, Inc. v. Allied Pilots Ass'n,* 228 F.3d 574, 585 (5th Cir. 2000).

[11]  *American Airlines* at 585; *see also Chandler v. James,* 180 F.3d 1254, 1270 (11th Cir. 1999) ("Compensatory sanctions merely imitate the relief that would be provided in a damages action.").

6

the court.  The issue of the contract breach and the resulting damages, if any, are for the district court to decide.

At the hearing OCA and Dr. Cupo stipulated as to the expert testimony regarding these damages.[12]  According to the stipulation, OCA' expert calculates the service fees due from August 1, 2007 through January 31, 2008 at $184,806.[13]  Dr. Cupo's expert calculated the service fees from the same period to be $152, 702.  The stipulation further states that the difference in these amounts is attributable to two factors.  First, Dr. Cupo's expert made his calculations based on Dr. Cupo's actual adjusted net income, while OCA's expert based his calculations on the historical adjusted net income.  Second, OCA's expert excluded certain expenses from his calculation as he did not consider them to be "center expenses" as defined by the BSA; the difference attributable to these expenses accounts for $15,851.21 of the discrepancy between the two experts' total amounts.[14]  Because the court is bound to compensate OCA based on actual damages shown, the court will use the figure based on the actual adjusted net income.  The court also finds, however, that the expenses for the legal fees, auto, travel, entertainment and meals are not properly categorized as "center expenses" within the meaning of the BSA, and will not allow those expenses to be entered into the calculation.[15]  Thus, the total amount the court will award

---

[12]  After the hearing the parties filed a joint stipulation into the record (P-2910).

[13]  The stipulation does not state why the parties chose to calculate damages only for that time period.  That is how the damages were presented to the court, however, so the court will only assess damages for that period and leave any further damages to be ascertained by the federal district court in the breach of contract litigation.

[14]  These expenses were for legal fees, an auto, and travel, entertainment and meals.

[15]  See Exhibit 1, the BSA at section 4.1.

for the service fees to OCA is $168,553.21.  Because the hearing on this matter was delayed

several times, the court will award interest on this amount only from the date of the judgment

granting the sanctions, not from the date of demand.  Interest will be at the federal judgment rate.

OCA next asks that the court order Dr. Cupo to resume performance under the BSA and

resume compliance with the Second Order and the stipulation.  The court declines to do so.  At

this point in the litigation, it appears that the relationship between the parties has been ruptured to

the point that the court finds it a better solution to allow the parties to litigate the breach of

contract issues between themselves in the district court and be done with each other.

Additionally, the court has reservations about ordering specific performance in a situation such as

this where the doctor clearly is not willing to resume working with OCA.

Finally, OCA asks for attorneys' fees and costs in the amount of $27, 956 incurred in

bringing its motion to enforce.  The court finds that this amount is reasonable and falls within the

parameters set forth by the Fifth Circuit for compensating for actual damages.  No testimony or

evidence was introduced at trial to support this amount, however, so the court will require OCA to

submit a billing statement or other supporting documents that Dr. Cupo may examine and contest

before this amount will be awarded.  The court is mindful that OCA has prosecuted several

similar motions against other doctors, and cautions that any attorneys' fees incurred for common

research that was used for more than one of the motions must be divided accordingly.  Also, the

court needs more specific information as to the costs for which OCA seeks compensation in

bringing the motion for contempt.

The court does not address the questions of whether the contract was breached either pre

or post petition, whether there is a legal defense to any breach that may have occurred, or whether

8

any damages arise from the breach of contract claims the parties have pending in the district court. The court also leaves open, subject to the discretion of the district court, the question of whether the sanctions imposed against Dr. Cupo that compensate OCA for the service fees should be credited to Dr. Cupo in the event that the district court finds for him on either of the breach of contract claims. The award of attorneys fees shall stand regardless of the outcome of the BSA litigation because OCA incurred those costs in bringing this action to enforce this court's order.

## III.   Conclusion

The court grants OCA's motion in part and awards OCA sanctions in the amount of $168,553.21, representing the actual damages proved by OCA at the hearing on its motion to enforce. The court additionally awards OCA attorneys fees and costs in the amount of $27,956, but that award is subject to OCA submitting documentation verifying that amount, and subject to Dr. Cupo's right to challenge any discrepancies in that documentation. The court denies OCA's motion insofar as it seeks to order Dr. Cupo to resume performance under the BSA. The court will issue a final order when the amount of the attorneys' fees and costs are set.

New Orleans, Louisiana, October 8, 2008.

Jerry A. Brown
U.S. Bankruptcy Judge